## IN THE COURT OF APPEALS OF IOWA

No. 17-0437
Filed May 3, 2017

**IN THE INTEREST OF C.H.,**
**Minor Child,**

**A.H.S., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Annette L. Boehlje, District Associate Judge.

The mother appeals from the juvenile court order terminating her parental rights to her minor child. **AFFIRMED.**

Jane M. Wright, Forest City, for appellant mother.

Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer, Assistant Attorney General, for appellee State.

Crystal Leann Ely of North Iowa Youth Law Center, Mason City, guardian ad litem for minor child.

Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**POTTERFIELD, Judge.**

The mother appeals from the juvenile court order terminating her parental rights to her child, C.H., born in 2011.[1] The mother challenges the statutory grounds, claiming C.H. could have been returned to her care at the time of the termination hearing or, alternatively, that she should have been given an additional six months to work toward reunification. Additionally, she maintains termination is not in C.H.'s best interests and claims a permissive factor weighs against the termination of her parental rights.

We review termination-of-parental-rights proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).

Here, the juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(e) and (f) (2016). If we find either ground is supported by clear and convincing evidence, we may affirm. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Regarding section 232.116(1)(f), the mother specifically challenges subsection (4), claiming there is not clear and convincing evidence C.H. could not be returned to her care at the time of the termination hearing.[2] At the time of the hearing in February 2017, the mother had been consistently testing positive for marijuana and methamphetamine, as well as admitting to the addiction to at least one pain medication, since April 2014, when the Iowa Department of Human Services first got involved with the family. The mother admitted she had last used methamphetamine on December 30, 2016.

---

[1] The father's parental rights were also terminated. He does not appeal.
[2] Although the mother's petition on appeal at one point challenges the proof on both subsections (1)(e) and (1)(f), she concedes the elements of subsection (1)(f) of the child's age, the CINA adjudication and the length of time since removal and states her "specific" challenge is to the element of the return of the child to her care.

She had yet to successfully complete a substance-abuse program. Additionally, she had been recently evicted from her apartment and was living on "the farm"— a property said to have a lot of drug traffic and unsafe people. The mother did not have employment and did not have the means to support C.H. There is clear and convincing evidence C.H. could not be returned to his mother's care at the time of the hearing.

Alternatively, the mother maintains she should have been given an additional six months to work toward reunification. A request for a six-month extension can only be granted if the court can make "the determination the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *See* Iowa Code § 232.104(2)(b). The mother maintains because there was a period of time—from approximately July through September 2016—when her assigned Family Safety, Risk, and Permanency (FSRP) provider was not providing all of the ordered visits and services, she should be given more time. We note the guardian ad litem brought the issue to the attention of the juvenile court in September 2016, and the court continued the October 2016 termination hearing as a result. The mother was given additional visits in order to make up for the missed time, and she was given more time to engage in services. However, the mother failed to take advantage of the additional time. She continued to use methamphetamine, did not enter a treatment program, and failed to regularly attend therapy. The mother notes the new FSRP worker cancelled some of the visits after October 2016 because of the mother's failure to confirm, in direct contravention of the October 2016 court order that the mother "should not be required to confirm these visits to avoid any

confusion about visits being cancelled." While we agree the court order should have been followed to the letter, we note it does not appear the mother brought this issue to the attention of the court until the time of the termination hearing. *See In re C.B.*, 611 N.W.2d 489, 493–94 (Iowa 2000). At that point, DHS had been involved with the family for approximately thirty-three months and C.H. had been out of the mother's care for approximately twenty-two months. Moreover, the reasons C.H. could not be returned to the mother's care were not due to a lack of bond or lack of interaction between the two. Rather, the issues continued to be—as they had been throughout—the mother's unaddressed issues involving substance abuse and her mental health. There is nothing in the record before us that leads us to believe the circumstances that led to removal would no longer exist if the mother was given an additional six months to work toward reunification.

The mother also maintains termination of her parental rights is not in C.H.'s best interests, *see* Iowa Code § 232.116(2), and the strength of the parent-child bond weighs against termination, *see id.* § 232.116(3)(c). It is undisputed C.H. and the mother share a bond and love each other. However, C.H. is a child with special needs; he requires structure and is involved in a number of services, including speech therapy. The mother has been unable to maintain consistency with her own scheduled services, let alone the additional commitment of keeping up with C.H.'s. C.H. is well-bonded with his foster family, who has stated their intent to adopt him if the mother's parental rights are terminated. C.H. has thrived while in the foster family's care. Most importantly, C.H. is in need of permanency, and the mother is not currently in a position to

provide him with that. *See C.B.*, 611 N.W.2d at 495 ("Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency."); *see also In re J.E.,* 723 N.W.2d 793, 801 (Iowa 2006) (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and the "need for a permanent home").

We affirm the termination of the mother's parental rights.

**AFFIRMED.**